The PEOPLE of the State of Colorado, Complainant,

v.

Douglas Scott ENGLER, Respondent.

Nos. 06PDJ019, 06PDJ043.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Feb. 26, 2007.

## REPORT, DECISION, AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. ISSUE

Disbarment is generally appropriate, absent significant evidence of mitigation, when a lawyer knowingly converts client funds and causes injury. Respondent knowingly converted settlement proceeds belonging to one client and engaged in several additional instances of misconduct with other clients. Respondent did not participate in these proceedings and provided no evidence of mitigation to offset several aggravating factors. Is disbarment the appropriate sanction in this case?

SANCTION IMPOSED: ATTORNEY DISBARRED

### II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

■ The People filed a complaint in 06PDJ019 on March 16, 2006, and in

06PDJ043 on July 20, 2006. Respondent failed to file an answer in either case and the Court granted motions for default on June 8, 2006 (06PDJ019) and September 14, 2006 (06PDJ043). The Court consolidated these cases on October 3, 2006. Upon the entry of default, the Court deems all facts set forth in the complaints admitted and all rule violations established by clear and convincing evidence. *People v. Richards*, 748 P.2d 341, 346 (Colo.1987).

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaints.[1] Respondent took and subscribed the oath of admission and gained admission to the Bar of the Colorado Supreme Court on November 14, 1986. He is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 15972 and is therefore subject to the jurisdiction of the Court.

### Case Number 06PDJ019

On February 28, 2005, the People received notice from Wells Fargo Services Co. that Respondent's trust account was overdrawn in the amount of $105.15. The People attempted to contact Respondent on numerous occasions and left several messages for him, but he never responded over the course of several months.

On December 6, 2005, the People filed a Petition for Immediate Suspension with the Colorado Supreme Court pursuant to C.R.C.P. 251.8.6 and requested that they administratively suspend Respondent for his repeated failure to cooperate with the request for investigation. The Colorado Supreme Court suspended Respondent from the practice of law pursuant to C.R.C.P. 251.8.6 on December 21, 2005.

Respondent violated C.R.C.P. 251.5(d) when he failed to respond to repeated attempts by the People for information. He also knowingly disobeyed his obligation without an open refusal to obey based on asser-

---

1. *See* the People's complaints filed March 16, 2006 and July 20, 2006.

tion that no valid obligation existed and in turn violated Colo. RPC 3.4(c). Finally, Respondent knowingly violated Colo. RPC 8.1(b) by failing to respond to the lawful demands for information made by the People during the investigation of the subject matter of this disciplinary proceeding. Respondent knew or should have known that he was failing to cooperate and respond to the requests by the People.

### Case Number 06PDJ043

#### Albright Matter

Caroline Albright retained Respondent in January 2002 to assist her with a personal injury claim. Respondent apparently communicated with Allstate Insurance during the next nineteen months, but failed to file a complaint before the statute of limitations date of November 14, 2003.

By the end of 2004, Ms. Albright began experiencing difficulty communicating with Respondent. He assured her on the occasions they met that he was working on her case and that he would get back to her. In January 2006, Ms. Albright contacted the People and learned that Respondent had been immediately suspended from the practice of law. Accompanied by Lakewood Police, Ms. Albright recovered her file from Respondent's office. The file did not show any activity after 2004.

Ms. Albright suffered injuries by Respondent's neglect in the amount of her time-barred claim for which the insurance company had been willing to pay as much as $20,000.00. Respondent violated Colo. RPC 1.3 by failing to file a complaint on Ms. Albright's behalf and by otherwise failing to prosecute her case. Respondent also violated Colo. RPC 1.4(a) by failing to timely respond to Ms. Albright's calls, by failing to advise her of his failure to timely file a complaint, and by failing to inform her of his failure to diligently work on her case.

#### MOMI Matter

Respondent represented Haliz Zakholi in a workers compensation case. He contracted with Medical Ops Management, Inc. ("MOMI") for an independent medical exami-

nation for Ms. Zakholi. MOMI arranged for the IME with Dr. J. Wunder and the services totaled $675.00. Respondent failed to pay MOMI and in turn violated Colo. RPC 8.4(h) by engaging in conduct that adversely reflects on his fitness to practice law.

#### Siener Matter

Respondent represented George Siener in a personal injury case arising out of an automobile accident that occurred in September 2002. On September 23, 2005, Respondent filed a complaint in Denver District Court on Mr. Siener's behalf. Respondent last communicated with Mr. Siener in November 2005.

On December 22, 2005, Judge Martin Egelhoff of the Denver District Court issued a show cause order and directed Respondent to show cause why Mr. Siener's complaint should not be dismissed for failure to prosecute. Respondent failed to respond to the show cause order and failed to notify Mr. Siener that the case had been dismissed.

Without his knowledge, Respondent settled Mr. Siener's case with the insurance carrier for $25,000.00 in November 2005. The insurance carrier sent Respondent a check for that amount and a release form. Respondent cashed the check in early January 2006. Mr. Siener did not sign the check and it appears that Respondent forged Mr. Siener's signature. Respondent failed to tender any of the $25,000.00 in settlement proceeds to Mr. Siener.

In March 2006, Mr. Siener called Respondent's office and learned that Respondent's telephone had been disconnected. Respondent has not communicated with Mr. Siener, nor has he returned Mr. Siener's file or tendered any portion of the settlement proceeds to him. The statute of limitations has since run on Mr. Siener's personal injury claim.

Through his conversion of client funds, Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and violated Colo. RPC 8.4(c). He also violated Colo. RPC 1.3 when he failed to prosecute Mr. Siener's case and failed to respond to Judge Egelhoff's show cause or-

der. Respondent violated Colo. RPC 1.4(a) and (b) when he failed to keep Mr. Siener reasonably informed about the status of his case and failed to comply promptly with reasonable requests for information. Finally, Respondent violated Colo. RPC 1.16(d) when he failed to give Mr. Siener notice that he had abandoned the representation, failed to return Mr. Siener's file despite his immediate suspension, and failed to return any of the settlement proceeds.

### Vonderschulenburg Matter

In February 2004, Gunther Vonderschulenburg retained Respondent to represent him in an appeal of the denial of his claim for Social Security disability benefits. Mr. Vonderschulenburg provided records and completed forms as requested by Respondent and authorized him to act as his representative before the Social Security Administration.

In March 2004, Respondent prepared a Request for Hearing, but apparently failed to send it to the Social Security Administration within the sixty days required for filing appeals. When contacted by Mr. Vonderschulenburg, Respondent explained that the process would take several months, but that he promised to write the Social Security Administration on a monthly basis to inquire as to the status of the appeal. Respondent did not communicate any further with Mr. Vonderschulenburg.

Mr. Vonderschulenburg eventually contacted the Social Security Administration to inquire about the status of his appeal. He found out that Respondent had not filed his appeal. After hearing Mr. Vonderschulenburg's story, a Social Security Administration claims representative allowed him to submit his appeal late. However, Respondent failed to send Mr. Vonderschulenburg his medical records or any other documents.

Respondent violated Colo. RPC 1.3 and 1.4(a) by failing to file Mr. Vonderschulenburg's appeal and by failing to communicate with him. Respondent also violated Colo. RPC 1.16(d) by failing to give Mr. Vonder-

schulenburg notice that he had abandoned the representation and failing to return his file. Finally, Respondent violated Colo. RPC 8.4(c) when he knowingly misled Mr. Vonderschulenburg about filing his appeal and giving him the impression that the delay in the appeal was due to the administrative process of assigning the appeal to an appeal judge.

### III. SANCTIONS

■ The ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) ("ABA Standards") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. In re Roose, 69 P.3d 43, 46–47 (Colo.2003). In imposing a sanction after a finding of lawyer misconduct, the Court must first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence pursuant to ABA Standard 3.0.

Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the complaints in evaluating the first three factors listed above. The Court finds Respondent violated duties owed to his clients, the public, and the legal system. Respondent specifically violated his duty to preserve the property of his clients, failed to act with reasonable diligence while representing his clients, and failed to maintain his personal integrity. The entries of default established that Respondent knowingly engaged in this conduct and caused significant actual harm to his clients.[2]

The Court finds several aggravating factors exist including multiple offenses, substantial experience in the practice of law, and indifference to making restitution. See ABA Standards 9.22(d), (i) and (j). Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent presented no evidence in mitigation.

---

**2.** George Siener and Gunther Vonderschulenburg each presented statements at the Sanctions Hearing. Mr. Siener has been reimbursed $25,000.00 by the Attorney's Fund for Client Protection.

The ABA *Standards* suggest that the presumptive sanctions for the misconduct evidenced by the admitted facts and rule violations in this case range from suspension to disbarment. However, the most egregious conduct was Respondent's theft of settlement funds belonging to Mr. Siener. Respondent knowingly converted at least a portion of the settlement funds belonging to his client. Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. ABA *Standard* 4.11.

■ In the absence of significant mitigating factors, Colorado Supreme Court case law applying the ABA *Standards* holds disbarment is the presumptive sanction for conversion of client funds alone. Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996). Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes. *Id.* at 10–11. Significant mitigating factors may overcome the presumption of disbarment, however, none are presented in this case. *See In re Fischer*, 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation).

Respondent's theft of his client's settlement funds alone warrants disbarment. His additional misconduct in abandoning his clients reinforces the conclusion that disbarment is the appropriate sanction in this case. Finally, Respondent's complete failure to participate in these proceedings further precludes any deviation from the presumptive sanction.

## IV. *CONCLUSION*

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, without explanation or mitigation, reveal the serious danger Respondent poses to the public. He knowingly converted client funds and abandoned his clients and this misconduct ad- versely reflects on her fitness to practice law. Absent extraordinary factors in mitigation not presented here, the ABA *Standards* and Colorado Supreme Court case law applying the ABA *Standards* both support disbarment. Upon consideration of the nature of Respondent's misconduct, his mental state, the significant harm and potential harm caused, and the absence of mitigating factors, the Court concludes there is no justification for a sanction short of disbarment.

## V. *ORDER*

The Court therefore **ORDERS**:

1. DOUGLAS SCOTT ENGLER, Attorney Registration No. 15972, is **DISBARRED** from the practice of law, effective thirty-one (31) days from the date of this Order, and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado.

2. DOUGLAS SCOTT ENGLER **SHALL** pay restitution to the Attorney's Fund for Client Protection, in the amount of $25,000.00.

3. DOUGLAS SCOTT ENGLER **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days within which to respond.

